FILED
2012 Jul-16  PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GENERAL STAR NATIONAL INSURANCE COMPANY, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:10-cv-03162-LSC |
| | ] | |
| MICHAEL D. HIGGINBOTHAM, et al., | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration two motions for summary judgment.  Plaintiff General Star National Insurance Company ("General Star") sued Defendants Michael D. Higginbotham ("Higgenbotham"); M&R Properties, LLC; Burnett & Gilbreath LLC d/b/a Wells Brothers Real Estate ("Wells Brothers"), Eric and Susan Gober; Randall and Stephine Lowe; Charles and Ann Smith; Scot and Kimberly Smith; Scott McGath; Margaret Minyon; and Lisa Meedor seeking a declaration of its rights and obligations under two insurance policies.  (Doc. 16.)  Wells Brothers filed a counterclaim against General Star for breach of contract, bad faith refusal to pay, and a declaration that General Star must defend and indemnify Wells Brothers under the

terms of a valid contract for insurance. (Doc. 22.) General Star has filed a motion for entry of summary judgment in its favor against all Defendants. (Doc. 39.) Wells Brothers filed a motion for summary judgment with regard to both its defense to General Star's claim and its claims for breach of contract and declaratory judgment against General Star. (Doc. 37.)

Upon review of the parties submissions, the Court noted that General Star was attempting to assert insurance exclusions against Wells Brothers that were not pled in the Amended Complaint in relation to Wells Brothers, nor were they raised in General Star's Answer to Wells Brothers' Counterclaim. (Doc. 46.) The Court gave General Star the opportunity to seek to amend its pleadings to add these affirmative defenses and ultimately determined that amendment was appropriate. (Doc. 51.) The Court then granted Wells Brothers leave to file a supplement to its motion for summary judgment, as requested (Docs. 51, 55), and allowed General Star to file a short response (Doc. 56).

Deadlines for submissions have passed, and the issues raised in the parties' motions for summary judgment are ripe for decision. Upon full consideration of the legal arguments and evidence cited by the parties, it is the opinion of this Court that General Star's motion for summary judgment is due to be granted, and Wells Brothers' motion for summary judgment is due to be denied.

II.    Facts.[1]

General Star issued a renewal Real Estate Errors & Omissions Liability Insurance Policy (Policy No. NJA989155D) to Wells Brothers for the period of January 13, 2009, to January 13, 2010 (the "2009/10 Policy"). In the 2009/10 Policy, General Star agreed to:

> pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages** for **Claims** first made against the **Insured** during the **Policy Period** or within sixty (60) days thereafter, arising out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by an **Insured** covered under this policy;
>
> . . . .
>
> The Company shall have the right and duty to defend any **Suit** against the **Insured** seeking **Damages** to which this insurance applies even if any of the allegations of the **Suit** are groundless, false or fraudulent. However, the Company shall have no duty to defend the **Insured** against any **Suit** seeking **Damages** to which this insurance does not apply.

(Doc. 16-1 at 4.)

On September 11, 2009, Eric and Susan Gober; Randall and Stephine Lowe; Charles and Ann Smith; Scot and Kimberly Smith; Scott McGath; and Margaret

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Minyon (collectively, "Claimants") filed a lawsuit styled *Eric and Susan Gober, et al. v. Michael D. Higginbotham*, 08-CV-2009-900139.00, in the Circuit Court of Blount County, Alabama, against Higginbotham, M&R, and others.   On July 15, 2010, Claimants filed a First Amended Complaint alleging the same causes of action and adding Lisa Meedor as a party plaintiff (the "Underlying Lawsuit")

In the Underlying Lawsuit, Claimants alleged they purchased six defective homes in the Christina Estates development in Altoona, Alabama.   Claimants maintained that Higginbotham acted as the realtor and developer for the homes, and M&R acted as the realty company and the developer for the homes.   The Claimants contend that they were induced to purchase the homes by Higginbotham, who represented that the homes were of "high quality" and that the builder had performed "superior work."   Claimants allege that, after purchase, they identified problems and construction defects with the homes.   Claimaints maintain that, despite numerous demands for Higginbotham and M&R to correct the issues with the homes, inadequate or insufficient repairs were made and the problems still exist.   They allege that their homes have been constructed and repaired in a manner below accepted industry standards and in violation of recognized building codes, resulting in damages to Claimants and their homes.   The First Amended Complaint asserts causes of action

for: negligence/wantonness (Counts One, Two and Three), fraudulent misrepresentation and/or innocent misrepresentation (Count Four), suppression of material facts pursuant to Ala. Code § 6-5-102 (1975) (Count Five), breach of contract (Count Six), breach of warranties (Count Seven), nuisance (Count Eight), third-party beneficiary to subcontracts (Count Nine), breach of the Real Estate Consumer's Agency and Disclosure Act, Ala. Code § 34-27-85 (1975) (Count Ten), civil conspiracy (Count Eleven), and deceit (Count Twelve).

Higginbotham was employed as a salesperson for Wells Brothers from May of 1997 through August 2008, which covered the listing period and most sales dates of the six alleged defective homes in the Christina Estates development. Prior to their sale, the homes in question were owned by M&R, which acted as the developer of Christina Estates and the subject properties. Higginbotham was a member of M&R Properties, LLC, and had a financial stake in the company.

In a letter dated January 13, 2010, Higginbotham and M&R, through their counsel, provided notice of the Underlying Lawsuit to General Star and demanded coverage and defense for Higginbotham under Wells Brothers' 2009/10 Policy. Upon receipt of the notice, General Star opened a file and began its investigation into the potential claim. In February 2010, Jane Sickler, a General Star claims representative, contacted Wells Brothers seeking information regarding the properties listed in the

Underlying Lawsuit. Within days, Wells Brothers provided information showing that three of the subject properties had been listed by Wells Brothers and Higginbotham was the salesperson. General Star denied coverage for Higginbotham in a letter dated October 25, 2010. General Star promptly followed its denial with the filing of a declaratory judgment action in this Court on November 18, 2010, against Claimants, Higginbotham, and M&R. (Doc. 1.)[2]

On or around January 19, 2011, Claimants filed a Second Amended Complaint in the Underlying Action adding Wells Brothers as a party defendant. Claimants alleged that Wells Brothers "listed" the properties sold to Claimants. The Second Amended Complaint omitted any specific allegation that Higginbotham was a "realtor" for the properties or that M&R was a realty company. Instead, Claimants alleged that Higginbotham acted as a developer and an "agent" of Wells Brothers at the time the subject properties were sold. The Second Amended Complaint asserted the same thirteen causes of action against all defendants as the First Amended Complaint and requested identical damages.

Wells Brothers forwarded a copy of the Second Amended Complaint to General Star on January 21, 2011. General Star denied coverage for Wells Brothers under the

---

[2]General Star amended its Complaint on November 22, 2010, to reflect the addition of Lisa Meeder as a Claimant in the Underlying Action. (Doc. 2.)

terms of the Real Estate Errors and Omissions Liability Insurance Policy in place at the time of Wells Brothers' claim. The policy was effective from January 13, 2011, through January 13, 2012 ("2011/12 Policy"), and contained exclusions for any claims "arising out of the rendering of or failure to render any professional services related to any: Christine Estates," and "any negligent act, error or omission or Personal Injury in the rendering of or failure to render Professional Services by . . . M&R Properties," including "any partners, directors, officers, principals or employees of" M&R Properties. (Doc. 40-5 at 21, 23.)

While there is no dispute that coverage for the Underlying Litigation does not exist under the 2011/12 Policy, Wells Brothers contends that it is entitled to coverage under the 2009/10 Policy, given the interrelated claims clause contained in both policies. The clause reads as follows:

> All **Claims** alleging interrelated acts, errors or omissions or **Personal Injuries** regardless of the number of **Claims**, **Insureds**, or claimants are considered to be one **Claim**. All such **Claims** are considered first made at the time the first **Claim** was first made. Furthermore, an interrelated act, error, or omission is deemed to have occurred at the time the first interrelated act, error or omission occurred.

(Doc. 16-1 at 6.) The 2009/10 Policy defines a "Claim" as:

> a demand for money, the filing of **Suit** or the institution of arbitration or mediation proceedings naming the **Insured** and alleging an act, error, omission or **Personal Injury**

resulting from the rendering of or failure to render **Professional Services**.

(*Id*. at 9.)  "Professional Services":

> means services performed by an **Insured** in an **Insured's** capacity as a broker, buyer's broker, agent, appraiser of real estate, a real estate consultant, auctioneer, counselor or property manager, as long as such service is rendered on or behalf of the customer or client in return for a fee, commission, or other compensation or in the course of solicitation of a client or customer for services which would result in payment of a fee, commission, or other compensation. It includes incidental services rendered by any **Insured** as a notary public, title agent or as a member of a formal accreditation committee, standards review committee or similar board or committee.

(*Id*. at 11.)  "**Insured** means any person or organization qualifying as an **Insured** under SECTION II - PERSONS INSURED of this policy."  (*Id*. at 10.)  In SECTION II -- PERSONS INSURED, the 2009/10 Policy states, in relevant part:

> Each of the following is an **Insured** under this policy to the extent set forth below:
> . . .
> C.    If the **Named Insured** is designated as a partnership, or **Limited Liability Partnership/ Corporation** in Item 5. of the Declarations Page, then the entity so designated and any current or former partner, employee, **Salesperson,** agent, **Predecessor Firm** or **Successor in Business** of such entity is an **Insured,** but only while acting on behalf of the **Named Insured** and within the scope of their duties as such; or
> D.  If the **Named Insured** designated in Item 5 of the Declarations Page is other than an Independent Contractor,

> a sole proprietorship, partnership or **Limited Liability Partnership/Corporation**, then the organization so designated and any current or former executive officer, director or stockholder, employee, **Salesperson**, agent, **Predecessor Firm** or **Successor in Business** of such organization is an **Insured**, but only while acting on behalf of the **Named Insured** and within the scope of their duties as such.[3]

(*Id*. at 5.)  The "Named Insured" on the Declarations Page is "Burnett & Gilbreath LLC dba Wells Bros Real Estate."  (*Id*. at 1.)

General Star disputes that Wells Brothers is entitled to coverage under the 2009/10 Policy and also cites several exclusions.  The 2009/10 Policy states that insurance does not apply to:

> CONTRACTING OR CONSTRUCTION ACTIVITIES
> . . .
> The insurance afforded by this policy does not apply to any Claim(s) based on or arising out of the rendering of or failure to render any professional services related to any CONTRACTING OR CONSTRUCTION ACTIVITIES.

(*Id*. at 18.)  The 2009/10 Policy also excludes claims:

> based on or arising out of the actual or attempted sale, leasing or appraisal of property by any Insured if at the time of the act or omission giving rise to such Claim, such Insured owned, or was the developer or constructor of, such

---

[3]While the parties cite to provision C, the Court notes that Wells Brothers is identified as a "Corporation" on the Declarations Page, and not a Limited Liability Corporation.  Accordingly, it appears to the Court that provision D would apply to determine whether an individual or entity is an "Insured."  Yet, both provisions result in the same outcome for the purposes of this case.

property. . . . [4]

(*Id.* at 25), and:

> Based on or arising out of the actual or attempted purchase of property by, or the actual or attempted sale, leasing or appraisal of property developed, constructed or owned by:
>
> > 1.      any entity in which any Insured has a financial interest; . . . .

(*Id.* at 26).

---

[4]This provision further provides: "This exclusion does not apply to:
> 1. the actual or attempted sale or leasing of property that the Insured did not construct or develop and in which the combined ownership interest of all Insureds at the time of sale or lease was less than 10%;
> 2. the actual or attempted sale of Residential Property 100% owned by an Insured if all of the following conditions are met:
> > i.  the property was acquired by an Insured under a written Guaranteed Sale Listing Agreement; and
> > ii. from acquisition to resale:
> > > (1) the title to the property was held by an Insured for less than twelve months; and
> > > (2) the property was continually offered for sale by an Insured;
> 3. the actual or attempted sale or leasing of Residential Property by an Insured who is the 100% owner of such Residential Property for more than 180 days and all the following conditions are met in connection with such sale:
> > i.  a written Home Inspection Report is issued by an ASHI or CREIA member inspector;
> > ii. a home warranty policy was purchased prior to closing;
> > iii. a seller disclosure form was signed by the Insured and acknowledged by the buyer prior to closing; and
> > iv. a state or local board approved standard sales contract was utilized.

(Doc. 16-1 at 25.)

III.    Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.  "If the moving party bears the burden of proof at trial, it must demonstrate that 'on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.'" *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)).  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

---

[5]Although Fed. R. Civ. P. 56 was amended on December 1, 2010, "the standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments).

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

If there are no genuine issues of material fact and a declaratory judgment is sought, the district court should grant summary judgment if there is but one reasonable conclusion under the substantive law governing the case. *Silverstein v. Gwinnett Hosp. Authority*, 861 F.2d 1560, 1563 (11th Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986)).

IV.   Analysis.

A.      Wells Brothers.

General Star has requested summary judgment in its favor and a declaration that it has no duty to defend or indemnify Wells Brothers in the Underlying Action.  Wells Brothers has filed its own motion for summary judgment on its counterclaim against General Star for breach of contract.  While it is undisputed that Wells Brothers is not

entitled to insurance coverage or defense under the 2011/12 Policy, Wells Brothers

contends that the misrepresentation, suppression, and Real Estate Consumers Agency

and Disclosure Act ("RECAD") claims in the Underlying Action fall under the

coverage of the 2009/10 Policy.

"Liability insurance coverage includes two separate duties: (1) the duty to

defend; and (2) the duty to indemnify." *Tanner v. State Farm Fire & Cas. Co.*, 874 So.

2d 1058, 1063 (Ala. 2003) (citing *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789,

791-92 (Ala. 2002)).   "It is well settled that [an] insurer's duty to defend is more

extensive than its duty to [indemnify]."   *Id.* (quotations omitted).   "Whether an

insurance company owes its insured a duty to provide a defense in proceedings

instituted against the insured is determined primarily by the allegations contained in

the complaint."   *Id.* (citing *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d

1164, 1168 (Ala. 1985)).   "If the allegations of the injured party's complaint show an

accident or an occurrence within the coverage of the policy, then the insurer is

obligated to defend, regardless of the ultimate liability of the insured." *Id.* at 1063-64

(citing *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977)).

However, "'[i]f there is *any uncertainty* as to whether the complaint alleges facts that

would invoke the duty to defend, the insurer must investigate the facts surrounding the

incident that gave rise to the complaint in order to determine whether it has a duty to

defend the insured." *Id*. at 1064 (emphasis added) (quoting *Blackburn v. Fidelity & Deposit Co. of Maryland*, 667 So. 2d 661, 668 (Ala. 1995)). "Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005).

In the 2009/10 Policy, General Star is obligated to:

> pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages** for **Claims** first made against the **Insured** during the **Policy Period** or within sixty (60) days thereafter, arising out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by an **Insured** covered under this policy;

(Doc. 16-1 at 4.) Wells Brothers is the Named Insured and "and any current or former executive officer, director or stockholder, employee, **Salesperson**, agent, **Predecessor Firm** or **Successor in Business** of such organization is an **Insured**, but only while acting on behalf of the **Named Insured** and within the scope of their duties as such."

(*Id*. at 5.) "Professional Services":

> means services performed by an **Insured** in an **Insured's** capacity as a broker, buyer's broker, agent, appraiser of real estate, a real estate consultant, auctioneer, counselor or property manager, as long as such service is rendered on or behalf of the customer or client in return for a fee, commission, or other compensation or in the course of

> solicitation of a client or customer for services which would result in payment of a fee, commission, or other compensation. It includes incidental services rendered by any **Insured** as a notary public, title agent or as a member of a formal accreditation committee, standards review committee or similar board or committee.

(*Id*. at 11.)

Wells Brothers argues that it is entitled to a defense for Claimants' misrepresentation, suppression, and RECAD claims because "[t]he Second Amended *Gober* Complaint alleges that Wells Brothers listed the properties, that Mike Higginbotham was its agent, and that Higginbotham committed misrepresentation, suppression and violations of RECAD. (Doc. 42 at 4; *see also* Doc. 38 at 12.)  In order to fall within the coverage of the policy, however, the Second Amended Complaint would need to include facts suggesting that Higginbotham committed misrepresentation, suppression, and violations of RECAD while acting in the scope of his duties as an agent of Wells Brothers *and* that the violations were committed in Higginbotham's capacity as a broker, buyer's broker, agent, appraiser of real estate, a real estate consultant, auctioneer, counselor or property manager.  There are no such facts.   The Second Amended Complaint omitted any specific allegation that Higginbotham was a "realtor."  Claimants instead alleged that Higginbotham "acted as the developer for Christine Estates." (Doc. 36-4 ¶ 19.)  While the Second Amended

Complaint does state that Higginbotham was acting as an "agent" of Wells Brothers "at the time" when Claimants purchased their homes (*Id.* ¶¶ 24, 34), there are no facts showing that Higginbotham acted in the scope of his duties as an agent of Wells Brothers or in his capacity as a broker, buyer's broker, agent, appraiser of real estate, a real estate consultant, auctioneer, counselor or property manager when he committed the wrongful conduct alleged.

Even if there were sufficient facts in the Second Amended Complaint to suggest that Higginbotham was an "Insured" and the claims at issue stem from his rendering or failure to render "Professional Services," the allegations indicate that insurance coverage is precluded under Exclusion M of the 2009/10 Policy, which excludes claims:

> based on or arising out of the actual or attempted sale, leasing or appraisal of property by any Insured if at the time of the act or omission giving rise to such Claim, such Insured owned, or was the developer or constructor of, such property. . . .

(Doc. 16-1 at 25.)  Claimants allege in the Second Amended Complaint that they "entered into contracts with Defendant M&R Properties LLC[,] and Michael Higginbotham to purchase the homes constructed by Defendants located at Christine Estates," and Higginbotham "acted as developer for Christine Estates." (Doc. 36-4

¶ 19.)

Claimants seem to argue that Wells Brothers is entitled to a defense because they allege in the Second Amended Complaint that Wells Brothers listed the properties at issue and listing the properties constitutes "Professional Services." (Doc. 41 at 7.)  There are, however, no facts in the Second Amended Complaint that suggest material misrepresentations, suppression, or lack of disclosure under RECAD were accomplished through the real estate listing process.

Again, "it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co.*, 928 So. 2d at 1012.  There are insufficient facts in the Second Amended Complaint to show that Claimants' misrepresentation, suppression, and RECAD claims "aris[e] out of any act, error, omission or **Personal Injury** in the rendering of or failure to render **Professional Services** by an **Insured**." (*See* Doc. 40 at 18.)

If the complaint "does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend." *Tanner*, 874 So. 2d at 1065.  If the evidence proves a covered accident or occurrence, General Star would also have an obligation to indemnify Wells Brothers. It is undisputed that Higginbotham was employed as a salesperson for Wells Brothers

when all six alleged defective homes in the Christina Estates development were listed and all but one were sold. Yet, Wells Brothers has not pointed the Court to any evidence establishing that the purported violations at issue occurred in Higginbotham's specific capacity as a salesperson or real estate agent for Wells Brothers. Claimants have not cited to specific portions of the record showing that Wells Brothers violated the law in listing the homes at issue. Neither Wells Brothers nor Claimants have alleged sufficient facts to show that the claims at issue are covered under the 2009/10 Policy.

Even if the Court assumed that such facts existed— namely, that Higginbotham is an "Insured" and the claims at issue arise from his rendering or failure to render "Professional Services"[6] on behalf of Wells Brothers— it is clear to the Court that Wells Brothers is excluded from insurance coverage under Exclusion Y of the 2009/10 Policy, which omits coverage for claims:

> Based on or arising out of the actual or attempted purchase of property by, or the actual or attempted sale, leasing or appraisal of property developed, constructed or owned by:
> 1. any entity in which any Insured has a financial

---

[6]The Court also has to assume that Wells Brothers' January 2011 notice of claim to General Star relates back to Higginbotham's January 2010 notice of claim under the interrelated claims clause so that coverage is available to Wells Brothers under the 2009/10 Policy. Because the Court finds that Exclusion Y precludes insurance coverage, even if Higginbotham is an "Insured" and the claims at issue arise from his rendering or failure to render "Professional Services," it is unnecessary for the Court to decide whether the interrelated claims clause applies.

interest; . . . .

(Doc. 16-1 at 26).   "In general, the insurer bears the burden of proving the applicability of any policy exclusion." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) (citing *Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 310 So. 2d 200, 202 (1975)). General Star has established that the misrepresentation, suppression, and RECAD claims against Wells Brothers arise out of the sale of homes owned by M&R. It is undisputed that Higginbotham was a member of M&R and had a financial stake in the company.  (Doc. 40-3 at ¶¶ 9-12.)

Wells Brothers contends that Exclusion Y is "ambiguous" and must be construed against the insurer.  Wells Brothers further argues that while Higginbotham must be an "Insured" to establish insurance coverage, he is not an "Insured" for the purposes of Exclusion Y because he has to be acting within the scope of his duties as an agent of Wells Brothers.  Wells Brothers proffers that owning a financial interest in M&R was not a part of Higginotham's duties as a Wells Brothers salesperson.

While a truly ambiguous provision in an insurance policy should be construed against the insurer, "[a] policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract." *State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So. 3d 1167, 1169 (Ala. 2009)

(citing *Watkins v. United States Fid. & Guar. Co.*, 656 So. 2d 337 (Ala. 1994)) . "When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them." *Id*. (citing *Western World Ins. Co. v. City of Tuscumbia*, 612 So. 2d 1159 (Ala. 1992); *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.*, 584 So. 2d 1316 (Ala. 1991)). Higginbotham qualifies as an "Insured" when the claims at issue arise from "Professional Services" rendered in the scope of his duties as an agent of Wells Brothers. Nothing in Exclusion Y hints that the financial interest in an ownership entity has to be part of the Insured's duties as an agent of Wells Brothers. The exclusion at issue is clearly aimed at omitting coverage when a Wells Brothers agent has an economic reason to lie or hide facts in conjunction with the purchase or sale of property because they have a financial interest in a third-party developer or owner of the property. The Court rejects Wells Brothers' "strained" and "twisted" reasoning" that the financial interest has to be part of the Wells Brothers' agent's job duties. *See Twin City Fire Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001). Summary judgment will be entered in favor of General Star and against Wells Brothers.

B.     Defendants Higginbotham and M&R.

Defendants Higginbotham and M&R have not filed any opposition to General Star's motion for summary judgment.  Upon full review of the evidence submitted, the Court finds that General Star has met its burden of proving that neither defendant is entitled to coverage or defense under the 2009/10 Policy.  M&R is not an "Insured" under the 2009/10 Policy.  There are insufficient allegations or evidence to show that Higginbotham is an "Insured" and the claims at issue stem from his rendering or failure to render "Professional Services."  Defendants have not cited to any facts, either in the underlying complaint or in the record, showing that Higginbotham's alleged wrongful conduct occurred in the scope of his duties as an agent of Wells Brothers and in his capacity as a broker, buyer's broker, agent, appraiser of real estate, a real estate consultant, auctioneer, counselor or property manager. Assuming the facts alleged in the underlying complaint suggested Higginbotham is an "Insured" for purposes of a duty to defend, insurance coverage was nonetheless precluded by Exclusion M.  (Doc. 16-1 at 25.)  Assuming there are sufficient facts in the record to show that Higginbotham is an "Insured" and the underlying claims arise from his rendering of "Professional Services," General Star has proven that Exclusion Y applies to preclude insurance coverage.  (Doc. 16-1 at 26.)  Summary judgment will

be granted in favor of General Star with regard to these two defendants.

V.      Conclusion.

For the reasons outlined above, General Star's motion for summary judgment will be granted in all respects. Wells Brothers' motion for summary judgment will be denied.  A separate order will be entered.

Done this <u>16th</u> day of <u>July 2012</u>.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297